ALBERT ZEFF v. THE STATE.

No. 8673.    Delivered December 17, 1924.

Rehearing denied, January 16, 1925.

Concealing Stolen Property—Evidence—Must Sustain Conviction.

Appellant was convicted of the offense of concealing stolen property. We reluctantly take issue with a jury which has passed upon the facts and adjudged the accused to be guilty, and with the learned trial court who has declined to grant a new trial on the insufficiency of the evidence. However, when in our judgment the facts do not meet the measure of the law, we cannot permit a verdict to stand, and this we have concluded, must be our decision in passing upon the facts before us in this case.

Appeal from the District Court of Wichita County. Tried below before the Hon. H. R. Wilson, Judge.

Appeal from a conviction of concealing stolen property; penalty, two years in the state penitentiary.

*Mathis & Caldwell,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the district court of Wichita county of concealing stolen property, and his punishment fixed at two years in the penitentiary.

Attention is called to the fact that the indictment, as same appears in the transcript, charges in the first part that "Albert Zeff * * * did then and there unlawfully and fraudulently conceal certain corporeal personal property, to-wit:" etc. Attention is called to this because of the peculiar facts upon which guilt is made to depend, to which we will devote some discussion later. The statute makes one guilty if he either receives or conceals stolen property, but where one is charged with concealing such property, but not with receiving it, it might require different proof.

Our close scrutiny of the facts has been challenged in this case. No witness seems to have been introduced for the defense. The State introduced the alleged owner who testified to the loss of 85 joints of oil well tubing of the value of $170.00, and to the fact that they had recovered 68 of said joints but that he did not know where they were recovered. The State then introduced one Robert Carroll who testified that about the 21st of July, 1923, he together with Fennor Carroll, his brother, one Jake Elliston and John Reed, went out some where and got 85 joints of oil well tubing "from the Magnolia." He testified that they hauled the tubing in Jeff Brothers' truck. That they had nobody's permission to take the tubing. He said they took it to Zeff Brothers' lease southwest of Iowa Park about four or five miles. He further testified that M. A. Zeff and Albert Zeff had a junk yard in Electra and that on the next day after he and the parties named took the tubing and put it on Zeff Brothers' lease, that he together with said parties and M. A. Zeff were talking and M. A. Zeff said he wished the tubing was not on his lease. M. A. Zeff and appellant Albert Zeff were not one and the same person. Asked if he was not talking to Albert Zeff and if the latter did not say that he wished the tubing was not on his lease, witness said he was sure it was M. A. Zeff to whom he was talking. He further testified that he did not know how many acres were in the Zeff Brothers' lease. He admitted that he had pleaded guilty to theft and that he had another indictment against him pending. He further testified that the truck that they used was kept in the junk yard of Zeff Brothers, which yard was run by Albert Zeff mostly. He also testified that Elliston and witness' brother Fennor had been sent to the penitentiary. By Constable McDonald the State proved that he followed a car track some time in July from a place where some tubing had been loaded into a truck and that he followed the track until a hard rain prevented his following it any further. He also said that he saw a truck in Zeff Brothers' junk yard which made tracks corresponding with those he had trailed. This witness further said that he went down on Zeff Brothers' lease and found nine joints of tubing that were identified by a driller named Lowe. Lowe testified that he found some tubing on "the Jew's lease",—that they got back 68 joints of tubing. He said this tubing was six or seven miles southwest of Iowa Park and was found in three different piles about a half mile

apart. In the pasture in which they found the tubing there were several wells and three or four houses in which people were living, but witness did not know how far the lease went nor how many acres it comprised but it was more than sixty. Witness Brown testified that he worked a couple of days for Zeff Brothers in their junk yard and that he heard about the theft of some tubing from the Magnolia; that Fennor Carroll said he had some he had stolen from the Magnolia; that Carroll was working for Zeff Brothers at that time. Witness said he heard Fennor Carroll tell Albert Zeff that the tubing was on his lease and that he had to change it before he could sell it because it was marked. This witness also testified that Zeff Brothers' lease was located south of Iowa Park and that he had been on that lease with Fennor Carroll and his wife and saw some tubing that Carroll had there. He did not hear "the Jews" have any conversation with anyone about changing the collars on the tubing or about furnishing anything to change them with. He said it was something like a week after this tubing was stolen that he went down on the lease with Fennor Carroll, who went there to see if the collars on the tubing were marked. He said that after that visit he saw Fennor Carroll get 24 collars at Zeff Brothers' junk yard and that Albert Zeff was present but that Fennor got them himself. He said that Fennor told Albert Zeff that he was going to change the collars, but nothing was then said about getting that stuff off of Zeff Brothers' lease. This witness, who was a State witness, also testified that he was present when Carroll tried to sell Albert Zeff that tubing and Zeff told him that he could not handle it because it was marked. He said he did not know whether Zeff would have handled it or not. This is the substance of the testimony.

As we read the record the criminating facts are that a truck was used in this theft which belonged to appellant and his brother; that Fennor Carroll who handled the truck was working for appellant and his brother; that Carroll placed the stolen tubing in a pasture on ground which presumably constituted the Zeff Brothers' lease; that M. A. Zeff said he did not want that tubing on their lease; that afterwards Carroll took some collars from the junk yard down to the lease, getting the collars from the junk yard while appellant was there; that Fennor Carroll tried to sell the tubing to appellant who declined to buy it because it was marked; that the tubing was found apparently at the place where Carroll had placed it.

We do not regard these facts as of sufficient cogency to justify a verdict of guilty against appellant. It may be that all the arrangements were made by appellant and that he was a party to everything that was done, but the burden is upon the State to prove sufficient facts to meet the requirements of the law before it deprives a citizen of his liberty. Fennor Carroll, according to State witness Brown, seems to have been the only party other than the owner, exercising any control or management or asserting the right of possession to the tubing at any time.

98 Tex. Crim.—40.

Robert Carroll, who is characterized in the charge of the court as an accomplice, does not claim to have known anything about appellant's connection with either the theft or the receiving or concealing of the property. The theft was committed in the night. The fact that a man who worked for appellant and his brother used their truck in committing the theft, would not necessarily imply their connivance, knowledge or participation. The property known as Zeff Brothers' lease seems to have been from five to seven miles from Iowa Park, and it is not shown that either of said brothers was at the lease, nor are they put in any such position by any testimony as to show by circumstances or otherwise that they were asserting any right of possesion or attempting any control over the alleged stolen property. While it is true that it is not necessary for their manual possession to have existed in order to make out a case of guilt against them, still there must be some sufficient circumstance from which at least some right to possess or control the property was claimed by them.

The State itself proved after it was taken Fennor Carroll offered to sell this tubing to appellant, and the failure of such effort. This seems to us to negative the proposition that Carroll had stolen the property and turned it over to or put it under the control of, or in the possession of appellant. The fact that stolen property was put in a pasture on their land or land which they had leased, would be but a circumstance which must necessarily be reenforced and supplemented by other circumstances before possession or control of such property could be shown in appellant or appellant and his brother. There is no suggestion in the testimony that appellant hid the tubing, or that he advised or directed where it be put, or that he made any false statement as to where it was.

We are in accord with the doctrine of the cases cited by the State in its brief, but do not believe the facts in the instant case to be as strong as those in any of the cases cited. We reluctantly take issue with a jury which has passed upon the facts and adjudged the accused to be guilty, and with the learned trial court who has declined to grant a new trial on the insufficiency of the evidence. However, when in our judgment the facts do not meet the measure of the law, we can not permit a verdict to stand, and this we have concluded must be our decision in passing upon the facts before us.

Being unable to bring ourselves to believe that the State has made out a case of concealing the property alleged to have been stolen in this case, the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*